ALBANY,
January, 1819.

JACKSON
v.
STEVENS.

JACKSON, *ex dem.* E. STEVENS, *against* T. STEVENS.

Where a husband seised *jure uxoris,* and his wife, by deed duly executed and acknowledged, convey land to a third person, who reconveys to the husband, the husband acquires a title to the land in his own right.

A deed executed by a *feme covert,* is not binding upon her, until acknowledged, and her subsequent acknowledgment does not relate back to the time of the acknowledgment of the deed.

So, where a husband and wife execute a deed for land of the wife, but which she does not then acknowledge, and the husband and wife afterwards execute another deed of the same land, which is acknowledged by the wife, and the wife then acknowledges the first deed, the title to the land is vested in the grantee in the second deed.

Where a person seised of three undivided fourth parts of a farm, conveys one equal moiety of the farm, describing it by metes and bounds, *together with all the estate, right, title, &c which he, the grantor, hath to the above described premises;* these general words are not to be construed as extending the grant beyond the one moiety of the premises.

Where a person has conveyed land, he will not be permitted afterwards to claim it, in opposition to his own deed, although the deed may not amount to an estoppel.

When land is conveyed to a man and his wife, they take neither as joint tenants, nor as tenants in common; but being one person in law, they are both seised of the entirety; neither of them can dispose of any part without the assent of the other; and the whole goes to the survivor, on the death of either; the statute (9 sess. ch. 12. s. 6. 1 *N. R. L.* 52.) does not apply to such a case.

THIS was an action of ejectment, for the undivided half of a farm in *Dover,* in *Dutchess* county, containing about 174 acres, and which is called the *Hunt* farm. The cause was tried before Mr. J. *Van Ness,* at the *Dutchess* circuit, in *April,* 1818.

The premises in question formerly belonged to *Lewis Hunt,* who died about the year 1777. The will of *L. Hunt,* by which he devised one third part of his estate to his wife for life, and the remainder of all his estate, real and personal, to his daughters, *Susannah Briggs,* and *Mary Stevens,* in fee, was read in evidence on the part of the plaintiff; and also, a deed from *Elkanah Briggs,* and *Susannah Briggs,* his wife, the devisee of *L. Hunt,* dated the 4th of *April,* 1814, to the plaintiff's lessor in fee, and duly acknowledged, on the same day, by both the grantors, before a Master in Chancery.

The defendant produced in evidence the following deeds :

1. A quit claim deed from *Samuel Stevens,* and *Mary Stevens,* the other devisee of *Hunt,* his wife, dated the 19th of *February,* 1784, to *Samuel Shelden,* for all the lands devised to *Mary Stevens,* by her father *L. Hunt,* which was duly acknowledged by the grantors, on the 25th of *February,* 1784.

2. A quit-claim deed for the same premises, from *Samuel Shelden* to *Samuel Stevens,* dated the 21st of *February,* 1784, and acknowledged on the 25th of *February,* 1784.

3. A deed with warranty from *Elkanah Briggs,* and *Susannah Briggs,* to *Samuel Stevens,* dated the 24th of *Decem-*

*ber,* 1795, of the undivided half of the *Hunt* farm, which was acknowledged by *Susannah Briggs,* the wife, on the 20th of *October,* 1814.

ALBANY,
January, 1819.

JACKSON
v.
STEVENS.

4. A quit-claim deed from *Justus Blanchard,* and *Mary* his wife, formerly *Mary Stevens,* who married *Blanchard* after the death of her former husband, *Samuel Stevens,* to *Philo Ruggles,* for the undivided half of the *Hunt* farm, dated the 25th of *April,* 1812, and duly acknowledged.

5. A quit-claim deed from *Philo Ruggles* and wife, to *Justus Blanchard,* and *Mary* his wife, for the same piece of land, dated the 25th of *April,* 1812, and duly acknowledged.

6. A deed from *Ebenezer Stevens,* the lessor of the plaintiff, and who was the devisee of *Samuel Stevens* and wife, to *Justus Blanchard,* dated the 15th of *July,* 1813, of the one equal undivided half of a certain farm, or tract of land, (being the *Hunt* farm before mentioned,) situate, &c. bounded, &c. together with " all the estate, right, title, interest, claim, and demand whatsoever, which he, the said *E. Stevens,* hath to the above described premises, either in law or equity, from the last will and testament of *Samuel Stevens,* late of the said town of *Dover,* deceased," &c. with covenant of warranty.

7. A deed from *Justus Blanchard,* and *Mary* his wife, (*Mary* formerly the wife of *Samuel Stevens,* who married *Blanchard,* being since dead, and *Blanchard* having married another woman, whose name was *Mary*) to *Thomas Stevens,* the defendant, dated the 21st of *April,* 1814, for the whole of the *Hunt* farm.

The plaintiff produced in evidence the will of *Samuel Stevens,* dated the 25th of *November,* 1809, by which he devised one half of the *Hunt* farm to his wife *Mary,* in fee, and the other half to the lessor of the plaintiff, in fee.

*Elkanah Briggs* died before the commencement of this suit, and after the death of *Samuel Stevens.*

A verdict was taken for the plaintiff, subject to the opinion of the Court, on a case. *Vide* S. C. vol. 13. p. 316.

*P. Ruggles,* for the plaintiff. As the deed from *E. Briggs* and his wife, of the 24th of *December,* 1795, was not ac-

knowledged by her, according to the statute, no estate passed from her to the grantee in that deed; and she had a right to make the subsequent conveyance, in 1814, to *E. Stevens.*

There could be no adverse possession, for though the deed, for want of the wife's acknowledgment, did not convey her right, yet it transferred all the estate which *B.* had, which was an estate for life. Where there is an outstanding particular estate, there can be no right of entry; and so the statute of limitations can have no operation. (*Jackson* v. *Schoonmaker,* 4 *Johns. Rep.* 390. *Jackson* v. *Sears,* 10 *Johns. Rep.* 435.)

The lessor under the devise of *Samuel Stevens,* took one fourth of the farm; and the deed of *E.* and *S. Briggs,* the lessor, conveyed to him the moiety, so that the lessor was seised of *three-fourths* of the farm; and *Mary S.,* who afterwards conveyed, with her husband, to *P. R.,* was entitled to one fourth.

The deed of the lessor of the plaintiff to *Justus Blanchard,* in 1813, conveys only that portion of the farm which he derived from the will of *Samuel Stevens,* or an undivided moiety; and the lessor now claims all that part which was not conveyed by that deed.

By the conveyance by *J. Blanchard* and his wife, to *P. Ruggles,* and his reconveyance to them, they became seised as *tenants in common;* for the statute, (1 *N. R. L.* 52. 9th sess. ch. 12. s. 6.) declares that no estate in joint tenancy can be held under any grant, devise, or conveyance, unless it is expressly declared in the conveyance, to pass in joint tenancy, and not in tenancy of common. *J. B.* then could not take the whole by survivorship. The deed from the lessor to *J. B.* cannot operate as an *estoppel.* (*Co. Litt.* 45. *a.* 47. *b.* 4 *Comyn's Dig. Estoppel,* (*E.* 8.) *Cro. Eliz.* 700.)

The lessor of the plaintiff, then, is entitled to recover, at least *three-eighths.*

*J. Tallmadge,* contra, contended, that the deed from *E. Stevens* to *Justus Blanchard,* conveyed two distinct interests; an undivided moiety of the farm, and, also, all the

estate and interest which he derived under the will of *Samuel S.*

*Justus B.* having survived his wife, became entitled, by virtue of that survivorship, to the whole of the estate derived to her from the will of *Samuel S.*

It is the settled rule of law, that if an estate in fee be conveyed to a man and his wife, they are neither joint tenants, nor tenants in common, for both are seised of an entirety ; for the husband and wife being considered as one person in law, they cannot take the estate by moieties ; so that neither husband nor wife can dispose of a part without the assent of the other ; and the whole remains to the survivor. (2 *Bl. Com.* 182. *Co. Litt.* 107. *Litt.* s. 291. s. 665. 3 *Bac. Abr.* 673. *JointTenants. (B.)* 2 *Cruise. Joint Tenants,* ch. 1. s. 35. 38.) The statute relative to joint tenants, does not apply to the case ; for it is not a case of joint tenancy. The common law doctrine must prevail.

As to the doctrine of *estoppel,* he cited 10 *Vin. Abr. Estoppel,* (2.) 8 *Mod.* 311.

*Oakley,* in reply, said, that the statute was intended to alter the common law, and the whole doctrine as to survivorship, in cases of joint tenancy. It ought, therefore, to have full operation, and should control the common law, in this case, as in every other of an estate conveyed to two persons, without express words, declaring it to be an estate in joint tenancy, and not an estate in common.

SPENCER, J. delivered the opinion of the Court. *Samuel Stevens* acquired a complete title, by his and his wife's deed to *Sheldon* and the reconveyance back from him to *Samuel Stevens,* to one half of the farm. He undoubtedly supposed he had a title to the whole farm, by his purchase in 1795, from *Elkanah Briggs* and his wife of their moiety ; but as that deed was not acknowledged by Mrs. *Briggs,* until the 20th of *October,* 1814, and on the 4th of *April,* 1814, *Briggs* and his wife, by their deed, duly ackowledged, conveyed to *Ebenezer Stevens* the whole farm, he acquired no title to that moiety. It is contended, however, that the acknowledgment of the deed by Mrs. *Briggs,* in *October* 1814, re-

lated back to the date of the deed, and rendered it valid from the beginning. But although she signed and sealed the instrument, it was not her deed, until she had acknowledged it, according to the statute. It could not bind her as a contract; she was not confirming an inchoate and imperfect agreement. The deed took its efficacy from the period of her acknowledgment, and there was nothing prior to which it could relate.

*Mary*, the widow of *Samuel Stevens*, took as ample an estate under the will of her husband, as *Ebenezer ;* and the testator, in fact, owning but one half, they must be deemed to take that half between them, as devisees. Thus, then, *Ebenezer Stevens* acquired a right under the will of *Samuel. Stevens*, and under the deed from *Elkanah Briggs*, and *Susan*, his wife, to three-fourths of the farm, and *Mary Stevens* to one fourth.

By the deed of the 15th of *July*, 1813, *Ebenezer Stevens* devested himself of one half of the farm, which he then conveyed to *Justus Blanchard*, leaving himself seised of only one-fourth of it. It cannot, I think, be contended, with any propriety, that this deed operates as an *estoppel* upon *Ebenezer Stevens*, beyond the moiety of the farm. Upon a fair construction of it, it conveys only a moiety of the farm. The deed, at first, grants one equal undivided half part of the farm, and also all the estate, right, title, &c. " which he, the said *Ebenezer Stevens*, hath to the above described premises either in law or in equity from the last will and testament of *Samuel Stevens*, of, &c. deceased." Now, the described premises were one half of the farm. It is true, the boundaries of the whole farm are mentioned, but the entire farm is not the premises described in the granting part. The one equal undivided half of the farm is there described. It is a principle in the construction of releases, and the reason of the rule extends to grants and conveyances of lands, that a release in general words shall be restrained to the particular occasion; and that where there are general words alone in a deed of release, they shall be taken most strongly against the releasor ; but when there is a particular recital in a deed, and then general words follow, the general words shall be qualified by the

particular recital. (Lord *Ray.* 663. *Hob.* 74. *Dyer*, 240.)
Technically speaking, the deed contains no recital, but the
special object of the deed was to convey one half of the
farm, and the general words are thrown in to show how the
right of the grantor was derived. It would be doing vio-
lence to the deed, and to the intention of the parties, to
say, that it was meant to convey the whole farm. Although
the grantor had not then a title even to one half the farm,
he has covenanted that he had power to sell a moiety; and
he cannot now be permitted to recover, in the face of the
deed, on the ground that he did not then own a moiety. It
was decided by this Court, in the case of *Jackson* v. *Bull*,
(1 *Johns. Cas.* 90.) that a person can never claim lands
which he has conveyed, in opposition to his own deed, and
this without regarding the deed as a technical *estoppel*.

The defendant has title under *Justus Blanchard* by the
deed of the 21st of *April*, 1815, which conveys to the de-
fendant all the *Hunt* farm. The remaining inquiry is, what
farther right *Blanchard* had to the farm, independently of
the deed from *Ebenezer Stevens* for the one half? |We have
seen that *Mary Stevens*, the widow of *Samuel Stevens*,
took under his will one half of the farm, but that half was
reduced to one-fourth, by reason that the devisor actually
owned but a moiety. She married *Justus Blanchard*, and
by their deed to *Philo Ruggles*, and his reconveyance to
*Blanchard*, and *Mary* his wife, they became seised of her
estate in the farm, under the will of *Samuel Stevens*. *Blan-
chard* survived his wife; and the question is, whether he
became entitled to the whole of the estate which they both
had in the farm, or only to a moiety of it. It appears to be
well settled, that if an estate be given to a man and his wife,
they take neither as joint tenants, nor as tenants in com-
mon; for, being considered as one person in law, they can-
not take by moieties, but both are seised of the entirety;
the consequence of which is, that neither of them can
dispose of any part, without the assent of the other, but the
whole goes to the survivor. (2 *Bl. Com.* 183. *Co. Litt.*
187. 2 *Vern.* 120.) The statutory provision, that no es-
tate in joint tenancy in lands, shall be held or claimed under
any grant, devise, or conveyance, unless the premises there-

in mentioned shall expressly be declared to pass, not in tenancy in common, but in joint tenancy, does not extend to this case, for the estate of the husband and wife is not a joint tenancy.

It, then, follows, that *Justus Blanchard* having survived his wife, he became seised, as such survivor, of her estate under the will of *Samuel Stevens ;* and, consequently, his deed of the 21st of *April,* 1814, to the defendant, invested him with a good title to the one-fourth part of the farm.

It was objected that the deed from *Briggs* and wife to *Ebenezer Stevens* was void, on the ground that *Samuel Stevens* held adversely. It will be observed, that he was dead when this deed was given, and that *Ebenezer Stevens* had succeeded, as a tenant in common with his widow, under the will, to an undivided portion of the estate ; and it may well be doubted, whether a deed which he took when actually entitled to a part of the estate can be said to be adverse. But there is another decisive answer : *Samuel Stevens* accepted a deed from *Briggs* and his wife, and he held under it such a right as the deed conveyed   That right was only the interest which *Briggs* had in the premises, as his wife never acknowledged the deed, until several years after the death of *Samuel Stevens ; Briggs'* interest was an estate for life, *jure uxoris.* The possession of *Samuel Stevens* was not then adverse to the right of *Briggs'* wife. (10 *Johns. Rep.* 441.)

On the whole, the plaintiff is entitled to recover one fourth of the premises and no more.

Judgment for the plaintiff accordingly.